**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **BRYAN TEAGUE** | § | |
| | § | |
| **V.** | § | **A-13-CA-444-SS** |
| | § | |
| **WILLIAM STEPHENS, Director,** | § | |
| **Texas Dept. of Criminal Justice-** | § | |
| **Correctional Institutions Division** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE SAM SPARKS
       UNITED STATES DISTRICT JUDGE

The Magistrate Judge submits this Report and Recommendation to the District Court
pursuant to 28 U.S.C. §636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United
States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to
United States Magistrates, as amended, effective December 1, 2002.

Before the Court are Petitioner's Application for Habeas Corpus Relief under 28 U.S.C.
§ 2254 (Document 1) and Respondent's Answer (Document 6).  Petitioner, represented by counsel,
has paid the filing fee for his application.  For the reasons set forth below, the undersigned finds that
Petitioner's application for writ of habeas corpus should be denied.

**STATEMENT OF THE CASE**

A.   **Petitioner's Criminal History**

According to Respondent, the Director has lawful and valid custody of Petitioner pursuant
to a judgment and sentence of the 21st Judicial District Court of Bastrop County, Texas, in cause
number 13773, styled The State of Texas v. Bryan Teague.  Petitioner was charged by indictment
with the first degree felony offense of murder, such offense alleged to have occurred on or about

August 20, 2008.   The State notified Petitioner of its intention to establish three habitual enhancement allegations, which if proven, increased the potential punishment range to a term of not less than 25 years, and not more than 99 years, or life.

On July 1, 2010, after a jury trial, Petitioner was found guilty of the offense as alleged in the indictment.   The next day, Petitioner pleaded untrue to the enhancement allegations.   The jury nevertheless found the allegations true, and assessed punishment at 99 years.   Petitioner's conviction was affirmed on February 16, 2012.   Teague v. State, No. 03-10-00434-CR, 2012 WL 512661 (Tex. App. – Austin 2012).   Petitioner filed a petition for discretionary review, but the Texas Court of Criminal Appeals refused it on April 25, 2012.

Petitioner also challenged his conviction in a state application for habeas corpus relief.   The Texas Court of Criminal Appeals denied it without written order on May 15, 2013.   Ex parte Teague, Appl. No. 79,312-01.

## B.   Factual Background

The factual background of this case is found in the Court of Appeals opinion and is repeated below.

> There is no dispute that Teague struck the decedent, Larry Jones, with a tool—either a grubbing hoe or a pickaxe—and that Jones died as a result of his injuries. All three of Teague's issues on appeal essentially stem from his contentions that he was instinctively defending himself and that he did not intend to hurt anyone.
>
> Appellant Teague, Charles Ellis, Will McMarion, the decedent Jones, and others occasionally passed the day drinking together under a large cedar tree near the intersection of Texas Highway 71 and FM 1209. The seeds of the deadly altercation were planted when Ellis found himself in debt for twenty dollars, either through a loan or a drug purchase, to McMarion. On the afternoon of August 20, 2008, Ellis offered ten dollars to McMarion as partial payment, but McMarion proclaimed that the debt had grown by a ten-dollar fee. Ellis disagreed, the two men scuffled, and McMarion kicked Ellis in the mouth, dislodging a tooth. Later that evening, Teague

2

went with Ellis to McMarion's home to pay an additional ten dollars and to declare the debt paid in full. It is here that McMarion's and Teague's versions of events diverge.

McMarion's version of the night's events is that he and Jones were returning to McMarion's trailer when Teague and Ellis attacked them. McMarion said that, as he was putting his key into his doorlock, Jones was "at the car right there setting the beer on the car." McMarion said he was attacked as he turned back toward Jones, causing him to stumble "a long distance." McMarion said Teague and Ellis hit and stomped him without yelling or even speaking to him. McMarion said he saw Jones, who weighed between 120 and 130 pounds, lying on the ground and apparently dead. McMarion testified about, and the jury saw pictures of, the injuries McMarion suffered during the altercation.

Teague's version recounts that he and Ellis went to McMarion's family compound to repay him the remainder of the debt. After McMarion's grandmother told them he was not home, they went to sit on the steps of McMarion's adjacent mobile home to wait for him. Teague testified that he saw only McMarion arrive, but later learned that Jones and a woman were with him. Teague testified that McMarion walked up and criticized him and Ellis for being too loud. Teague said that when he offered McMarion ten dollars in full satisfaction of Ellis's debt, McMarion told him the debt was none of Teague's business. Teague said that McMarion was drinking a canned beer and threw the partially full can at Teague's head from about ten feet away, then McMarion and Jones threw additional beers at him. Teague testified that he thought that his life was in jeopardy and that he needed to protect himself. He saw a grubbing hoe or pickaxe leaning against a car, grabbed it, and fended off McMarion's advance by hitting him in the chin with the flat end of the tool. Teague said the tool weighed between eight and ten pounds. Teague said Jones then kicked and hit him from the side, so he grabbed the tool and swung it to encourage Jones to get off of him. Teague said he aimed for Jones's side, not his head, and was not sure he had even hit Jones in the side.FN1 When Jones did not attack further, Teague went to assist Ellis in fending off McMarion. Teague hit McMarion on the leg with the tool, then hit him with his fist. The struggle ended shortly thereafter. Teague testified that Jones was lying on the ground and that Jones said he was all right, so Teague and Ellis walked home. Teague said he took the tool with him and tossed it into some brush so that McMarion would not get it and attack them again.

> FN1. Having later learned of Jones's head injury, Teague theorized at trial as to how that might have occurred during the struggle.

McMarion's grandmother, Hazel Thomas, confirmed that Teague and Ellis knocked on her door asking to see McMarion and that she told them that McMarion did not

live with her. She testified that shortly thereafter she heard an extended argument, which prompted her to call the police.

Peace officers responding to the scene found Jones lying on the ground, incoherent, with blood pooled around his head. They also found McMarion beaten up and bleeding badly. Jones died days later in the hospital. The medical examiner testified that Jones had two wounds—one right behind his armpit on his back, about one inch across and 16 centimeters deep, and one in his temple, so deep that it penetrated his skull, went into the brain, and severed his left carotid artery. The severed artery caused a stroke from which Jones could not recover. The medical examiner testified that the head wound was caused by a sharp object like a pickaxe.

The trial court instructed the jury on murder and self-defense. Implicitly declining to find the homicide justified by self-defense, the jury found Teague guilty of murder.

Teague v. State, No. 03-10-00434-CR, 2012 WL 512661, at *1-2 (Tex. App. – Austin 2012).

## C.   Petitioner's Grounds for Relief

Petitioner raises the following grounds for relief:

1.     Petitioner was deprived of his constitutional right to due process of law and effective assistance of trial counsel where trial counsel either requested a jury instruction on the lesser-included offense of manslaughter and the request was denied but he failed to make a record of it for purposes of appeal, or failed to request a jury instruction on the lesser-included offense of manslaughter under facts and circumstances where no reasonable trial counsel would have failed to ensure that such instruction was given;

2.     Petitioner was deprived of his constitutional right to effective assistance of appellate counsel when appellate counsel failed to raise a meritorious claim on direct appeal that Petitioner had been deprived of his constitutional right to self-representation;

3.     Petitioner was deprived of the right to due process of law when the State knowingly permitted its key witness Will McMarion to provide false testimony regarding the incident giving rise to the charges against Petitioner;

4.     The State violated Petitioner's right to due process of law when it failed to disclose discoverable Grand Jury testimony as ordered by the district court; and

5.     The evidence is legally insufficient to support the jury's rejection of Petitioner's claim of self-defense.

4

**D.     Exhaustion of State Court Remedies**

Respondent does not contest that Petitioner has exhausted his state court remedies regarding the claims brought in this application.  A review of the state court records submitted by Respondent shows that Petitioner has properly raised these claims in previous state court proceedings.

## DISCUSSION AND ANALYSIS

**A.     The Antiterrorism and Effective Death Penalty Act of 1996**

The Supreme Court has summarized the basic principles that have grown out of the Court's many cases interpreting the 1996 Antiterrorism and Effective Death Penalty Act.  See Harrington v. Richter, – U.S. –, 131 S. Ct. 770, 783-85 (2011).  The Court noted that the starting point for any federal court in reviewing a state conviction is 28 U.S.C. § 2254, which states in part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The Court noted that "[b]y its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." Harrington, 131 S. Ct. at 784.

One of the issues Harrington resolved was "whether § 2254(d) applies when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." Id.  Following

all of the Courts of Appeals' decisions on this question, <u>Harrington</u> concluded that the deference due a state court decision under § 2554(d) "does not require that there be an opinion from the state court explaining the state court's reasoning." <u>Id.</u> (citations omitted).  The Court noted that it had previously concluded that "a state court need not cite nor even be aware of our cases under § 2254(d)." <u>Id.</u> (citing <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002) (per curiam)).  When there is no explanation with a state court decision, the habeas petitioner's burden is to show there was "no reasonable basis for the state court to deny relief." <u>Id.</u>  And even when a state court fails to state which of the elements in a multi-part claim it found insufficient, deference is still due to that decision, because "§ 2254(d) applies when a 'claim,' not a component of one, has been adjudicated." <u>Id.</u>

As <u>Harrington</u> noted, § 2254(d) permits the granting of federal habeas relief in only three circumstances: (1) when the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of the Supreme Court; (2) when the earlier decision "involved an unreasonable application of" such law; or (3) when the decision "was based on an unreasonable determination of the facts" in light of the record before the state court.  <u>Id.</u> at 785 (citing 28 U.S.C. § 2254(d); <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000)).  The "contrary to" requirement "refers to the holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision."  <u>Dowthitt v. Johnson</u>, 230 F.3d 733, 740 (5th Cir. 2000) (quotation and citation omitted).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than . . . [the Supreme Court] has on a set of materially indistinguishable facts.

Id. at 740-41 (quotation and citation omitted).  Under the "unreasonable application" clause of § 2254(d)(1), a federal court may grant the writ "if the state court identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id. at 741 (quotation and citation omitted).  The provisions of § 2254(d)(2), which allow the granting of federal habeas relief when the state court made an "unreasonable determination of the facts," are limited by the terms of the next section of the statute, § 2254(e).  That section states that a federal court must presume state court fact determinations to be correct, though a petitioner can rebut that presumption by clear and convincing evidence.  See 28 U.S.C. § 2254(e)(1).  But absent such a showing, the federal court must give deference to the state court's fact findings.  Id.

**B.      Ineffective Assistance of Trial Counsel**

In his first ground for relief, Petitioner argues that he was denied effective assistance of counsel when counsel failed to make a record for appeal regarding a request for a jury instruction on the lesser-included offense of manslaughter or failed to make such request.[1]  Petitioner made this same claim in his state application for habeas corpus relief, which was denied without written order.

Ineffective assistance of counsel claims are analyzed under the well-settled standard set forth in Strickland v. Washington, 466 U.S. 668  (1984):

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant can make

---

[1]  There is no evidence trial counsel made a request for a lesser-included jury instruction.

> both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Id. at 687.  In deciding whether counsel's performance was deficient, the Court applies a standard of objective reasonableness, keeping in mind that judicial scrutiny of counsel's performance must be highly deferential.  Id. at 686-689.  "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  Id. at 689.  "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  Id. (Citation omitted).  Ultimately, the focus of inquiry must be on the fundamental fairness of the proceedings whose result is being challenged.  Id. at 695-97.  Accordingly, in order to prevail on a claim of ineffective assistance of counsel, a convicted defendant must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  Id. at 687.

The Court of Criminal Appeals denied Petitioner's state application without written order and without the benefit of trial counsel's affidavit.  The Court presumes the state court determined trial counsel was not deficient because he employed the common trial strategy of "all-or-nothing," forcing the State to prove the higher offense.  In addition, the state court likely found requesting a lesser offense instruction would have been incompatible with counsel's self-defense theory.

Presumably, the state court also found Petitioner did not show that there is a reasonable probability that the result of the proceeding would have been different had the lesser-included offense instruction been given. The jury here affirmatively found a higher mens rea requirement necessary to convict for murder than for a conviction for manslaughter. There is simply not enough in the record to support Petitioner's assertion that the failure of counsel to include a lesser charge in the jury instruction was sufficient to undermine confidence in the outcome of his trial, and deem his assistance of counsel ineffective.

Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence. Accordingly, the Court is of the opinion that 28 U.S.C. § 2254, as amended by the AEDPA, bars habeas corpus relief on Petitioner's claim that he received ineffective assistance of trial counsel.

**C.      Ineffective Assistance of Appellate Counsel**

In his second ground for relief, Petitioner argues his appellate counsel was ineffective because she failed to raise a meritorious claim on direct appeal that Petitioner had been deprived of his constitutional right to self-representation. In support of this claim Petitioner notes:

> At the close of the State's case, Teague advised the District Court "I'm firing my attorney right now." 17 RR 10. Teague explained that Attorney Ray Esperson was not presenting the evidence Teague wished to have introduced and was preventing Teague from preparing and presenting a defense on his own behalf. 17 RR 10-11. The District Court denied the request. 17 RR 12.

A criminal defendant has a constitutional right to the effective assistance of counsel at trial and on a first appeal as of right. U.S. Const. amend. VI, XIV; Evitts v. Lucey, 469 U.S. 387, 393-95, (1985); Strickland, 466 U.S. at 688; Anders v. California, 386 U.S. 738, 744 (1967). An ineffective

assistance claim is governed by the familiar standard set forth in Strickland, 466 U.S. at 668. See also Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001) (applying the Strickland standard to ineffective assistance claims against appellate counsel). As explained earlier, to establish ineffective assistance of counsel Petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. Strickland, 466 U.S. at 688.  To show prejudice, a petitioner must show that, but for appellate counsel's performance, there is a reasonable probability he would have prevailed on appeal.  Smith v. Robbins, 528 U.S. 259, 285 (2000).

A criminal defendant has a constitutional right to self-representation at trial when he knowingly and intelligently waives the right to counsel.  Faretta v. California, 422 U.S. 806, 807, 835 (1975).  The defendant's waiver of his right to counsel must be unequivocal, and it should not be inferred by the court in the absence of a clear and knowing election.  Brown v. Wainwright, 665 F.2d 607, 610 (5th Cir. 1982) (en banc).

In Petitioner's case, he never requested permission to represent himself at trial.  Rather, after the close of the State's case, Petitioner informed the trial court he wanted to "fire" his attorney. After a brief recess, the court proceedings continued and Petitioner informed the court he intended to testify on his own behalf.  As explained by Respondent, Petitioner's statement that he was firing his attorney was neither an unequivocal invocation of his right to defend himself, nor a waiver of his Sixth Amendment right to counsel.  Accordingly, appellate counsel was not deficient for failing to raise a frivolous issue on appeal.

Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's

determination of facts in light of the evidence.  Accordingly, the Court is of the opinion that 28 U.S.C. § 2254, as amended by the AEDPA, bars habeas corpus relief on Petitioner's claim that he received ineffective assistance of appellate counsel.

**D.    False Testimony**

In his next ground for relief, Petitioner argues the State knowingly permitted its key witness Will McMarion to provide false testimony regarding the incident giving rise to the charges against Petitioner.

"The Supreme Court has held that the Due Process Clause is violated when the government knowingly uses perjured testimony to obtain a conviction." Kinsel v. Cain, 647 F.3d 265, 271 (5th Cir. 2011) (citing Napue v. Illinois, 360 U.S. 264, 269 (1959)).  To establish a denial of due process through the use of perjured testimony, a petitioner must show "that (1) the witness gave false testimony; (2) the falsity was material in that it would have affected the jury's verdict; and (3) the prosecution used the testimony knowing it was false." Reed v. Quarterman, 504 F.3d 465, 473 (5th Cir. 2007); see also Creel v. Johnson, 162 F.3d 385, 391 (5th Cir. 1998).

Petitioner has established neither that McMarion's statements were perjurious, nor that the prosecutor "knew" the testimony was false by merely citing to purported and contradictory testimony from witnesses, inconsistencies within a witness's testimony and conflicts between reports, written statements and the trial testimony of prosecution witnesses.  Moreover, Petitioner's reliance on the affidavits of Debra Whisenant is unavailing.  At trial, counsel explained Whisenant's competence to testify was questionable, her recollection may not be valid, and her testimony would be fatal to the defense's theory of self-defense. 17 RR 12-13.

11

Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence. Accordingly, the Court is of the opinion that 28 U.S.C. § 2254, as amended by the AEDPA, bars habeas corpus relief on Petitioner's claim that the State knowingly permitted its key witness Will McMarion to provide false testimony regarding the incident giving rise to the charges against Petitioner.

**E.      Failure to Disclose Grand Jury Testimony**

In his next ground for relief, Petitioner argues the State violated his right to due process of law when it failed to disclose discoverable Grand Jury testimony as ordered by the district court.

Prior to trial, the following exchange took place in a pretrial hearing:

DEFENSE COUNSEL:  Thank you, Your Honor.  We also request a copy of the Grand Jury testimony in this case which led to the indictment, because of the fact, and again, there appears to be a number of contradictions from each of the witnesses as to statements that they made and then appeared to change statements at various points.  And we'd like to know exactly what the statements were made before the Grand Jury which led to the subsequent indictment. . . .

THE COURT: As to – the State certainly can't turn over any Grand Jury testimony without a Court order, so I'll – if there was a transcript of any Grand Jury testimony, order that that be turned over to the defense.

THE STATE:  And as we've discussed there is none.

DEFENSE COUNSEL:  Your Honor, as far as our request for Grand Jury testimony to be provided to us, it's the Court's ruling that will not be provided: is that correct?

THE COURT:  The Court's ruling is if there was any transcript of any testimony, then I would – the Court's ordering that be turned over.  But if there's not a transcription, there's not anything to turn over.

DEFENSE COUNSEL:  Thank you, Your Honor.

12

12 RR 7-9. As was made clear at the pretrial hearing, there was no transcript of the Grand Jury testimony.

Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence. Accordingly, the Court is of the opinion that 28 U.S.C. § 2254, as amended by the AEDPA, bars habeas corpus relief on Petitioner's claim that the State failed to disclose discoverable Grand Jury testimony as ordered by the district court.

**F.      Insufficiency of the Evidence**

In his final ground for relief, Petitioner argues the evidence is legally insufficient to support the jury's rejection of Petitioner's claim of self-defense. Petitioner's claim is construed as a challenge to the sufficiency of the evidence.

In addressing a sufficiency of the evidence claim, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). Petitioner raised this same claim in his direct appeal. The appellate court evaluated the claim as follows:

> In reviewing the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed.2d 560 (1979); Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). A person commits murder if he intentionally or knowingly causes the death of an individual, or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. See TEX. PENAL CODE ANN. §§ 19.02(b)(1), 19.02(b)(2) (West 2011). A person acts knowingly with respect to a result of his conduct when he is aware that it is reasonably certain to cause the result. TEX. PENAL CODE ANN. § 6.03(b) (West 2011). The jury may infer the intent

to kill from the use of a deadly weapon unless it would not be reasonable to infer that death or serious bodily injury could result from the use of the weapon. Jones v. State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). The jury may also infer an intent to cause serious bodily injury from the manner in which the offense was committed, the nature of the wounds inflicted, and the relative size and strength of the parties. Nickerson v. State, 69 S.W.3d 661, 667 (Tex. App.-Waco 2002, pet. ref'd).

When a defendant introduces evidence to support a claim of self-defense, the State bears the burden of persuasion to disprove it. Zuliani v. State, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); Saxton v. State, 804 S.W.2d 910, 913–14 (Tex. Crim. App. 1991). The State must prove its case beyond a reasonable doubt. Zuliani, 97 S.W.3d at 594; Saxton, 804 S.W.2d at 913. To determine the legal sufficiency of the evidence to support a judgment of conviction, we must ask whether, after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt and also could have found against the appellant on the self-defense issue beyond a reasonable doubt. Saxton, 804 S.W.2d at 914. We must presume that the factfinder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. Jackson, 443 U.S. at 326; Clayton, 235 S.W.3d at 778.

The trial court instructed the jury on murder, then instructed on self-defense as follows:

> [A] person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force.
>
> ....
>
> "Deadly force" means force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury.
>
> "Reasonable belief" means a belief that would be held by an ordinary and prudent person in the same circumstances as the actor.
>
> ....
>
> If you find from the evidence beyond a reasonable doubt that the defendant, Bryan Teague, on or about the 20th day of August 2008, in Bastrop County, Texas, did then and there intentionally or knowingly cause the death of an individual, Larry Jones, by striking

14

> Larry Jones with an object unknown to the Grand Jury, or with intent
> to cause serious bodily injury to an individual, Larry Jones, commit
> an act clearly dangerous to human life that caused the death of Larry
> Jones, by striking Larry Jones with an object unknown to the Grand
> Jury as alleged in the indictment, but you find, or have a reasonable
> doubt thereof, that the defendant was justified in using deadly force
> against Larry Jones because he was justified in using force against
> Larry Jones in self-defense, and the defendant used deadly force when
> and to the degree he reasonably believed the deadly force was
> immediately necessary to protect himself against Larry Jones' use or
> attempted use of unlawful deadly force then you will find the
> defendant not guilty of Murder.

Teague contends that the physical evidence corroborates his version of events and
shows that McMarion's story was not possible. Jones was found lying between a
vehicle and a fence, not next to McMarion's home where McMarion said he was
ambushed. Blood was found surrounding Jones's head, spattered on a vehicle
headlight, and on the couch where McMarion was found. Contrary to McMarion's
account of a silent attack, his grandmother reported hearing loud arguing outside her
home that persisted long enough that she called 911 for law enforcement.

We conclude that the jury could have accepted most of Teague's version of events
and still rejected the reasonableness of his self-defense claim. The jury could have
believed that McMarion and Jones initiated the struggle by hurling beer cans as
Teague described and that Jones's physical assault escalated the conflict. The jury
could have given some credence to Teague's testimony that he did not want to hurt
anyone when he picked up the tool, did not swing at Jones's head, and was merely
trying to get Jones to back off when he aimed for his side. A rational jury
nevertheless could have found beyond a reasonable doubt (1) that Teague intended
to cause serious bodily injury to Jones when he swung the eight-to-ten pound sharp
metal implement and that, by hitting Jones in the head with the tool, Teague
committed an act clearly dangerous to human life that killed Jones, and (2) that
Teague could not reasonably have believed that he needed to use deadly force to
defend himself. Even giving credence to Teague's version of events, the record
supports the jury's rejection of Teague's self-defense claim.

The case for affirmance is stronger if we presume—as we must—that the jury
resolved evidentiary conflicts in favor of the verdict. On the facts McMarion
described, Teague was the aggressor and not entitled to self-defense. See TEX. PENAL
CODE ANN. § 9.31(b)(4) (West 2011). The discrepancy Teague asserts regarding
Jones's location is neither apparent from the record nor dispositive. Although
McMarion testified that the assault on him began near the trailer door, he testified
that Jones lagged behind him and was setting some beer on a car. That location for

15

Jones is consistent with Teague's testimony that his confrontation with Jones occurred near a car, with the blood spatter on the car, and with Jones's location when found by law enforcement. Even if Jones was near the trailer door when the struggle began, the relatively limited physical scope of the scene described by witnesses means he could have moved from the trailer to the car and fence quickly. Teague's own testimony is that he was on the trailer's steps when McMarion and Jones pelted him with beer cans,FN2 that he obtained the pickaxe near a vehicle, and that Jones kicked him after he picked it up. Thus, Jones could have been near the car at all times or moved from the trailer to the car during the struggle. Though McMarion's assertion that the assault was silent conflicts with his grandmother's and Teague's report of an extended argument, resolution of that conflict is immaterial to the elements of murder and self-defense. To the extent McMarion's assertion of a silent attack weighs on credibility or an element of the offense, the standard of review requires that we view the evidence in the light most favorable to the verdict and presume that the jury resolved this conflict in favor of the verdict. <u>Jackson</u>, 443 U.S. at 326; <u>Clayton</u>, 235 S.W.3d at 778.

> FN2. Teague lists the discovery of beer cans near the vehicle among the physical evidence that supports his version of events. Teague testified, however, that he was seated near the mobile home when pelted with beer cans. The location where the beer cans were discovered is more consistent with McMarion's version of events.

We conclude that the evidence is legally sufficient to support the jury's rejection of Teague's self-defense theory and the conviction for murder.

<u>Teague v. State</u>, No. 03-10-00434-CR, 2012 WL 512661, at *2-3 (Tex. App. – Austin 2012).

Clearly, there was evidence, as related by the Court of Appeals, to support the jury's finding that Petitioner was guilty of murder. Petitioner's argument comes down to a claim that the jury should have believed his claim of self defense. The jury, however, is well within its bounds to make credibility determinations. "It is well-settled that credibility determinations are the sole province of the jury." <u>United States v. Cathey</u>, 259 F.3d 365, 368 (5th Cir. 2001). The evidence, viewed in the light most favorable to the prosecution, clearly supports a guilty verdict. Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of

the evidence.  Habeas corpus relief on Petitioner's claim of insufficiency of the evidence is therefore unwarranted.

## RECOMMENDATION

It is recommended that Petitioner's application for writ of habeas corpus be denied.

## CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in Slack v. McDaniel, 529 U.S. 473, 484 (2000).  In cases where a district court rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Id.  "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Id.

In this case, reasonable jurists could not debate the denial of the Petitioner's section 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to

17

deserve encouragement to proceed.  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) (citing Slack, 529 U.S. at 484).  Accordingly, it is recommended that no certificate of appealability issue.

## OBJECTIONS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections.  Battles v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See 28 U.S.C. § 636(b)(1)(C);  Thomas v. Arn, 474 U.S. 140, 150-153 (1985); Douglass v. United Servs. Auto. Assoc., 79 F.3d 1415 (5th Cir. 1996)(en banc).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 2nd day of September, 2014.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE