IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

2014 OCT 27  PM 3: 25

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____

BRYAN TEAGUE,

                    Petitioner,

-vs-                                                                    Case No.  A-13-CA-444-SS

WILLIAM STEPHENS,

                    Respondent.

_____

## O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Petitioner Bryan Teague's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus [#1]; Respondent William Stephens' Answer [#6] to the Petition; the Report and Recommendation of the United States Magistrate Judge [#7]; Petitioner's Objections [#8] to the Report and Recommendation; and Respondent's Objections [#9] to the Report and Recommendation.

All matters in this case were referred to United States Magistrate Judge Andrew W. Austin for report and recommendation pursuant to 28 U.S.C. § 636(b) and Rule 1 of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.  Teague is entitled to de novo review of the portions of the Magistrate Judge's report to which he filed specific objections.  28 U.S.C. § 636(b)(1).  All other review is for plain error.  *Starns v. Andrews*, 524 F.3d 612, 617 (5th Cir. 2008).  Nevertheless, this Court has reviewed the entire file de novo, and agrees with the Magistrate Judge's recommendation.

## Background

### I.     Procedural Background

Stevens avers he has lawful and valid custody of Teague pursuant to a judgment and sentence of the 21st Judicial District Court of Bastrop County, Texas.  A jury convicted Teague of one count of murder in the first degree, and after finding Teague was a habitual offender, assessed his punishment at 99 years in prison.

On February 16, 2012, the Third Court of Appeals in Austin affirmed Teague's conviction. *Teague v. State*, No. 03-10-00434-CR, 2012 WL 512661 (Tex. App.—Austin 2011, pet. ref'd).  The Texas Court of Criminal Appeals thereafter refused Teague's petition for discretionary review. Teague then challenged his conviction in an application for state habeas relief, which the Texas Court of Criminal Appeals denied without written order on May 15, 2013.  *Ex parte Teague*, Appl. No. 79,312-01.

### II.    Factual Background

As noted by the Magistrate Judge, the factual background of this case is found in the Third Court of Appeals opinion and is repeated in pertinent part below.

> There is no dispute that Teague struck the decedent, Larry Jones, with a tool—either a grubbing hoe or a pickaxe—and that Jones died as a result of his injuries. . . .
>
> The seeds of the deadly altercation were planted when [Charles] Ellis found himself in debt for twenty dollars, either through a loan or a drug purchase, to [Will] McMarion.  On the afternoon of August 20, 2008, Ellis offered ten dollars to McMarion as partial payment, but McMarion proclaimed that the debt had grown by a ten-dollar fee.  Ellis disagreed, the two men scuffled, and McMarion kicked Ellis in the mouth, dislodging a tooth.  Later that evening, Teague went with Ellis to McMarion's home to pay an additional ten dollars and to declare the debt paid in full. It is here that McMarion's and Teague's versions of events diverge.

McMarion's version . . . is that he and Jones were returning to McMarion's trailer when Teague and Ellis attacked them. McMarion said that, as he was putting his key into his doorlock, Jones was "at the car right there setting the beer on the car." McMarion said he was attacked as he turned back toward Jones, causing him to stumble "a long distance." McMarion said Teague and Ellis hit and stomped him without yelling or even speaking to him. McMarion said he saw Jones, who weighed between 120 and 130 pounds, lying on the ground and apparently dead. McMarion testified about, and the jury saw pictures of, the injuries McMarion suffered during the altercation.

Teague's version recounts that he and Ellis went to McMarion's family compound to repay him the remainder of the debt. After McMarion's grandmother told them he was not home, they went to sit on the steps of McMarion's adjacent mobile home to wait for him. Teague testified that he saw only McMarion arrive, but later learned that Jones and a woman were with him. Teague testified that McMarion walked up and criticized him and Ellis for being too loud. Teague said that when he offered McMarion ten dollars in full satisfaction of Ellis's debt, McMarion told him the debt was none of Teague's business. Teague said that McMarion was drinking a canned beer and threw the partially full can at Teague's head from about ten feet away, then McMarion and Jones threw additional beers at him. Teague testified that he thought that his life was in jeopardy and that he needed to protect himself. He saw a grubbing hoe or pickaxe leaning against a car, grabbed it, and fended off McMarion's advance by hitting him in the chin with the flat end of the tool. Teague said the tool weighed between eight and ten pounds. Teague said Jones then kicked and hit him from the side, so he grabbed the tool and swung it to encourage Jones to get off of him. Teague said he aimed for Jones's side, not his head, and was not sure he had even hit Jones in the side.[1] When Jones did not attack further, Teague went to assist Ellis in fending off McMarion. Teague hit McMarion on the leg with the tool, then hit him with his fist. The struggle ended shortly thereafter. Teague testified that Jones was lying on the ground and that Jones said he was all right, so Teague and Ellis walked home. Teague said he took the tool with him and tossed it into some brush so that McMarion would not get it and attack them again.

McMarion's grandmother, Hazel Thomas, confirmed that Teague and Ellis knocked on her door asking to see McMarion and that she told them that McMarion did not live with her. She testified that shortly thereafter she heard an extended argument, which prompted her to call the police.

Peace officers responding to the scene found Jones lying on the ground, incoherent, with blood pooled around his head. They also found McMarion beaten up and

---

[1] Having later learned of Jones's head injury, Teague theorized at trial as to how that might have occurred during the struggle.

bleeding badly. Jones died days later in the hospital. The medical examiner testified that Jones had two wounds—one right behind his armpit on his back . . . and one in his temple, so deep that it penetrated his skull, went into the brain, and severed his left carotid artery. The severed artery caused a stroke from which Jones could not recover. The medical examiner testified that the head would was caused by a sharp object like a pickaxe.

The trial court instructed the jury on murder and self-defense. Implicitly declining to find the homicide justified by self-defense, the jury found Teague guilty of murder.

*Teague*, 2012 WL 512661 at *1–2.

## III.  Teague's Grounds for Relief

Teague alleges the following grounds for relief:

(1)    Ineffective assistance of trial counsel and deprivation of right to due process, where trial counsel either:

    (a)    failed to make a record of the trial court's denial of his requested jury instruction on the lesser-included offense of manslaughter; or

    (b)    failed to request a jury instruction on the lesser-included offense of manslaughter;

(2)    Ineffective assistance of appellate counsel, as counsel failed to raise the claim Teague was denied his right to self-representation at trial;

(3)    Deprivation of right to due process, where the State knowingly permitted Will McMarion to falsely testify against Teague;

(4)    Deprivation of right to due process, where the State failed to disclose discoverable grand jury testimony as ordered by the District Court; and

(5)    Legally insufficient evidence for the jury to reject his claim of self-defense.

The parties do not dispute Teague has exhausted his state remedies, and a review of the record shows he has done so.

**Analysis**

## I.      Legal Standard

Federal habeas corpus relief is governed primarily by the Antiterrorism and Effective Death Penalty Act of 1996, colloquially known as AEDPA.  Section 2254 permits the granting of federal habeas relief where a state court denies a prisoner's habeas claim in only three circumstances: (1) when the state court's decision "was contrary to" clearly established federal law as decided by the Supreme Court; (2) when the state court's decision "involved an unreasonable application of" such law; or (3) when the decision "was based on an unreasonable determination of the facts" in light of the record before the state court.  *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011) (citing 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).  The obligation to defer to state court decisions created by § 2254(d) "does not require that there be an opinion from the state court explaining the state court's reasoning"; in that scenario, deference remains afforded, and the habeas petitioner has the burden to show there was "no reasonable basis for the state court to deny relief." *Harrington*, 131 S. Ct. at 784.

## II.     Application

### A.      Ineffective Assistance of Counsel

The United States Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984), provides the familiar two-pronged test for establishing an ineffective assistance claim:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes

-5-

> both showings, it cannot be said that the conviction . . . resulted from a breakdown
> in the adversary process that renders the result unreliable.

*Id.* at 687. To establish deficient performance, Teague must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, [Teague] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689. To establish prejudice, Teague must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Further, as the Fifth Circuit has explained, review of an ineffective assistance claim in the AEDPA context is doubly deferential to the state court:

> It bears repeating that the test for federal habeas purposes is *not* whether [the petitioner] made [the *Strickland*] showing. Instead, the test is whether the state court's decision—that [the petitioner] did *not* make the *Strickland* showing—was contrary to, or involved an unreasonable application of, the standards, provided by the clearly established federal law (*Strickland*), for succeeding on his IAC claim.

*Schaetzle v. Cockrell*, 343 F.3d 440, 444 (5th Cir. 2003) (emphasis in original).

## 1.    Trial Counsel

Teague argues his trial counsel was ineffective either for (1) failing to make an adequate record of the trial court's decision to deny his request for an instruction on the lesser-included offense of manslaughter, or alternatively, (2) failing to request that instruction at all. The Court rejects Teague's first argument outright, as there is no evidence in the record Teague's counsel ever requested a lesser-included offense instruction. The charge conference at trial was conducted off the record, *see* 17 RR 125, and Teague's counsel provided no affidavit recounting his actions therein.

It would be pure speculation to conclude Teague's counsel was ineffective for failing to make a record of an ostensible denial of an objection.  Teague hangs his hat on the following exchange:

> THE COURT: . . . . We had done a charge conference, and there's a proposed charge in front of the parties, including some of the things we talked about at the conference. [Are] there any other additions, deletions, requests from the State?
>
> MR. HALL:  None, sir.
>
> THE COURT:  And [Teague's trial counsel] Mr. Espersen, [are] there any additions, deletions, corrections?
>
> MR. ESPERSEN:  No, Your Honor.

17 RR 126:10–18.  Teague urges the Court's use of the phrase "some of the things" indicates there was some objection to the jury instructions proffered during the conference.  The problem, however, is the massive inferential leap from the general suggestion someone objected to something and the specific conclusion Teague's trial counsel objected to the absence of his requested lesser-included offense instruction.  Teague's first argument is rejected.[2]

His second fares no better.  Assuming trial counsel did not request the lesser-included offense instruction, Teague must overcome the "strong presumption" counsel made the strategic decision not to do so.  *Strickland*, 466 U.S. at 689.  The Court agrees with the Magistrate Judge that the state court may well have determined trial counsel was not deficient in failing to request the instruction because that failing was a reasonable strategic decision consistent with his effort to seek a full acquittal on the basis of self-defense.  Counsel may have believed he stood a better chance of

---

[2] Teague further claims the trial court asked Teague's counsel "whether Teague had 'any *other*' additions, deletions, or corrections," which in Teague's view, coupled with the court's acknowledgment only "some of the things" spoken about in the conference made it into the charge, necessarily indicates Teague's counsel made an objection during the conference.  *See* Pet'r's Br. [#1-1], at 14.  As shown by the above excerpt from the transcript, however, Teague is mistaken about what the court asked of whom.  The trial court asked counsel for the State, not Teague's counsel, whether he had "any other additions, deletions, or corrections."  17 RR 126:10–18.  Thus, on Teague's logic, counsel for the State, not Teague's counsel, would be the person who made objections during the conference.

winning acquittal for Teague by not instructing the jury on manslaughter, as the jury would then be required to carefully evaluate whether the state carried its burden of proof concerning Teague's culpable mental state.

Teague objects to the Magistrate Judge's "presum[ption]—which does not even rise to the level of an actual 'Finding of Fact'"—the state court found no deficiency based upon the possibility trial counsel made the strategic choice to pursue an all-or-nothing strategy.  As previously noted, however, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Harrington*, 562 U.S. at 784 (citing cases from the Third, Eleventh, Second, Fourth, Sixth, Tenth, and Eighth Circuits reaching the same conclusion).  Teague's burden was to show there was no reasonable basis for the state court to deny him relief; he failed to carry that burden, as the presumption of valid strategy afforded trial counsel's choice to forego the instruction is a reasonable basis for the state court's implicit finding Teague failed to satisfy the *Strickland* test. *Cf. Anderson v. Collins*, 18 F.3d 1208, 1219 (5th Cir. 1994) (counsel's failure to request manslaughter instruction was reasonable strategic decision where counsel believed manslaughter defense would jeopardize his primary defense).

## 2.    Appellate Counsel

Teague contends his appellate counsel was ineffective because he failed to raise the "meritorious" claim Teague was deprived of his constitutional right to self-representation at trial. The Court agrees with the Magistrate Judge that any such claim would in fact have lacked merit, as Teague never asked the trial court for permission to represent himself.

"In order for a defendant to represent himself, he must 'knowingly and intelligently' forego counsel, and the request must be 'clear and unequivocal.'" *Brown v. Wainwright*, 665 F.2d 607, 610 (5th Cir. 1982) (quoting *Faretta v. California*, 422 U.S. 806, 835 (1975)). Here, the record reflects neither a knowing and intelligent waiver of Teague's right to counsel nor a clear and unequivocal request to represent himself. Resisting that conclusion, Teague points to two colloquies with the trial judge prior to and following his original attorney's motion to withdraw, and to a statement Teague made following the conclusion of the State's case at trial. During the first colloquy, Teague indicated he would represent himself "[i]f I have to" and stated, in reply to the court's question whether he would like to be represented or to represent himself, "I'd just go ahead and do it myself. I've written all my motions and stuff." 7 RR 6:7–11, 13:1–5. However, Teague also stated during the same discussion "[j]ust go ahead and let [counsel] represent me, man, because I want to get this over with." *Id.* at 14:6–7.

During the second colloquy, which occurred the morning of the original trial date and during which Teague's attorney withdrew, Teague stated: "Your Honor, I need someone that's going to help me fight this case[,]" 11 RR 6:11–13; in answering the judge's question whether he wanted to represent himself, indicated "Sir, I'm not dying to represent myself[,]" *id.* at 9:10–14; and, in answering the judge's question whether Teague would like his pro se motions filed at that time, told the court "I'd like to speak to somebody else if you're going to hire somebody else to represent me—to let them look at it[,]" *id.* at 10:8–12.

Finally, after the State rested, Teague told the court "I'm firing my attorney right now" and explained his attorney was "not admitting what [he] want[ed] admitted into evidence" or objecting to things to which Teague wanted him to object, preventing Teague from "prepar[ing] a proper

-9-

defense." 17 RR 10:10–11:25. The court denied Teague's request to fire his attorney. *Id.* at 12:1–2. After a recess, Teague then told the court he wished to testify on his own behalf. *Id.* at 15:5–9.

At best, the record reveals Teague asserted vacillating positions on his desire to represent himself. Federal courts have found a defendant waived his right to self-representation where he took such vacillating positions up to the time of trial. *See United States v. Gutura*, 430 F. App'x 314, 317 (5th Cir. June 23, 2011) (unpublished) (defendant did not clearly and unequivocally assert right to represent himself where he "equivocated" about desire to do so and allowed appointed counsel to file pleadings for him after expressing interest in proceeding pro se); *United States v. Bennett*, 539 F.2d 45, 51 (10th Cir. 1976) (defendant did not clearly and unequivocally assert right to represent himself where he both repeatedly moved to represent himself and accepted representation). Accordingly, this Court concludes the state court did not err in rejecting Teague's ineffective assistance of appellate counsel claim as grounds for habeas relief.

## B.      False Testimony

Teague next argues the State knowingly allowed McMarion, its key witness, to give false testimony during trial. To establish a violation of a defendant's due process rights based upon the State's use of false testimony, the defendant must show (1) the witness gave false testimony; (2) the falsity was material, meaning it would have affected the verdict; and (3) the prosecution used the testimony knowing it was false. *Reed v. Quarterman*, 504 F.3d 465, 473 (5th Cir. 2007). Teague complains McMarion testified, without correction, that on the night of the incident, Teague laid in wait for McMarion and "blind-sided" McMarion with a hit to the back of the head.

Teague fails to establish the state court's rejection of his false testimony claim involved an unreasonable application of clearly established federal law,[3] as he fails to show McMarion's testimony was false or the prosecution used it knowing it was false. Attempting to do so, Teague cites to conflicting witness testimony and descriptions of the locations where blood was and was not found at the crime scene. Whether Teague and Ellis or McMarion initiated the violence, however, was a disputed issue of fact at trial, and the conflicting evidence cited by Teague establishes only witness credibility and fact issues for the jury, not demonstrably false statements upon which the State knowingly relied. Teague's argument to the contrary is rejected, and the Court finds no error with the state court's rejection of his claim on this ground.

## C.   Failure to Disclose Grand Jury Testimony

Teague next argues the State failed to disclose discoverable grand jury testimony as ordered by the trial court. However, the record makes plain no such grand jury testimony existed. Prior to trial, the parties had the following exchange with the trial court:

> DEFENSE COUNSEL: . . . We also request a copy of the Grand Jury testimony in this case which led to the indictment, because of the fact, and again, there appears to be a number of contradictions from each of the witnesses as to statements that they made and then appeared to change statements at various points. And we'd like to know exactly what the statements were made before the Grand Jury . . . .

> THE COURT: . . . [I]f there was a transcript of any Grand Jury testimony, [I'll] order that that be turned over to the defense.

> THE STATE: And as we've discussed there is none.

---

[3] Teague cites to *Nobles v. Johnson*, 127 F.3d 409 (5th Cir. 1997), for the proposition this Court should apply the less deferential, pre-AEDPA de novo standard of review in evaluating his false testimony claim. *See id.* at 416. The reasoning of *Nobles* on this point, however, is foreclosed by the Supreme Court's 2011 *Harrington* decision, which held a state court's summary disposition of a habeas petition is an adjudication on the merits. *See* 131 S. Ct. at 784.

12 RR 7:9–17, 8:19–9:1.  To the extent Teague claims the State was lying when it told the court no

such transcripts existed, he provides nothing in support of his theory other than unsupported

accusations.  The state court did not err in denying Teague relief on this ground.

**D.      Insufficiency of the Evidence**

Teague's final contention is that "[t]he evidence is legally insufficient to support the jury's

rejection of Teague's claim of self-defense."  Pet'r's Br. [#1-1] at 41.  The Magistrate Judge

construed this contention as a challenge to the sufficiency of the evidence, and went on to find there

was sufficient evidence to support the jury's finding Teague was guilty of murder, characterizing

Teague's argument as "com[ing] down to a claim that the jury should have believed his claim of self

defense."  Report & Recommendation [#7] at 16.  Teague objects to this finding, stating "it is the

*physical* evidence . . . that renders the jury's verdict unsupportable" as it "directly contradicts the

jury's finding of guilt."  Pet'r's Objections [#8] at 11–12.  Teague's claim therefore appears to be

given the locations in which blood spatter and beer cans were found at the crime scene, no rational

trier of fact could have rejected Teague's self-defense claim.

The State also filed Objections to the Report and Recommendation, objecting "to the extent

it finds that Teague's legal sufficiency claim is cognizable."  Resp't's Objections [#9] at 2.  The

State argues the standard for insufficiency of the evidence warranting habeas relief articulated by the

Supreme Court in *Jackson v. Virginia*, 443 U.S. 307 (1979), applies only where the challenged

finding concerns an element of the crime—and as absence of self-defense is not an element of the

crime of murder in Texas, Teague's particular legal sufficiency claim is noncognizable on federal

habeas review.  *See Jackson*, 443 U.S. at 319 (when conducting a sufficiency-of-the-evidence

analysis "the relevant question is whether, after viewing the evidence in the light most favorable to

-12-

the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt"); Resp't's Br. [#6] at 34 (arguing *Jackson* does not apply "to review the 'sufficiency' of a jury's determination to *reject* an affirmative defense . . . because *Jackson*'s due process guarantee extends only to proof of the *elements of the crime*[.]").

In support of its argument, the State cites *Engle v. Isaac*, 456 U.S. 107 (1982). In *Engle*, three Ohio state prisoners brought federal habeas claims based in part upon allegedly unconstitutional jury instructions on self-defense. Ohio had long held an accused raising self-defense was required to carry the burden of persuasion thereon by a preponderance of the evidence. *Id.* at 110. The Ohio legislature then passed a statute reallocating that burden to the prosecution (the burden of production remained upon the accused); however, until the Ohio Supreme Court interpreted it, courts applied the statute as though it had not altered Ohio's traditional burden-shifting rules. *Id.* at 111. The *Engle* prisoners, each of whom raised self-defense, were tried after passage of the statute but before the high court's articulation of the new burdens; thus, their juries were instructed the accused bore the burden of persuasion on self-defense. *Id.* at 111–12. None of them objected to the instruction at trial.

The prisoners first argued due process required the prosecution to prove absence of self-defense beyond a reasonable doubt, as the new Ohio statute had "implicitly designated absence of self-defense an element of the crimes" with which they were charged by assigning the burden of persuasion to the prosecution. *Id.* at 119. The Sixth Circuit agreed, finding due process "required the state 'to meet the burden that it chose to assume.'" *Id.* (quoting *Isaac v. Engle*, 646 F.2d 1129, 1135 (6th Cir. 1980), *rev'd*, 456 U.S. 107 (1982)). The Supreme Court reversed, rejecting that argument:

-13-

Our opinions suggest that the prosecution's constitutional duty to negate affirmative defenses may depend, at least in part, on the manner in which the State defines the charged crime. These decisions, however, do not suggest that whenever a State requires the prosecution to prove a particular circumstance beyond a reasonable doubt, it has invariably defined that circumstance as an element of the crime. A State may want to assume the burden of disproving an affirmative defense without also designating absence of the defense an element of the crime. . . . While [the prisoners] attempt to cast their first claim in constitutional terms, we believe that this claim does no more than suggest that the instructions at [the prisoners'] trials may have violated state law.

*Id.* at 120–21. The State construes this passage of *Engle* to mean "'a state may elect to carry the burden of proof with respect to a properly raised defense while insulating that portion of its case from habeas corpus review by expressly not designating the lack of the affirmative defense as an element of the crime.'" Resp't's Br. [#6] at 34 (quoting *Allen v. Redman*, 858 F.2d 1194, 1198 (6th Cir. 1988)). Given the apparent absence of any judicial opinions other than the Sixth Circuit's *Allen* decision addressing that construction of *Engle*, however, the Court believes the safest course of action is to assume without deciding Teague's self-defense sufficiency claim is cognizable on habeas review.[4] *Accord Cooper v. Quarterman*, No. H-07-0326, 2008 WL 728130, at *4 (S.D. Tex. Mar. 18, 2008) (entertaining habeas petitioner's claim of legally insufficient evidence to disprove self-defense). The Court therefore turns to the merits.

Under Texas Penal Code § 19.02(b)(2), a person commits murder when he (1) intends to cause serious bodily injury and (2) commits an act clearly dangerous to human life that (3) causes the death of an individual. *Cannon v. State*, 401 S.W.3d 907, 910 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). As the jury in this case was instructed, under Texas self-defense law, "'[a] person

---

[4] This is particularly true given the Supreme Court's conclusion the *Engle* prisoners' second argument—that the State "could not constitutionally shift the burden of proving self-defense to them" because acting in self-defense negates the applicable culpable mental state, meaning the State must be required to disprove self-defense as part of its task of proving the *mens rea* element—stated "a colorable constitutional claim." *Engle*, 456 U.S. at 121–22.

is justified in using [deadly] force against another when and to the degree he reasonably believes the [deadly] force is immediately necessary to protect himself against the other's use or attempted use of unlawful [deadly] force.'" Report & Recommendation [#7] at 14–15 (quoting *Teague*, 2012 WL 512661, at *3) (reciting jury instructions); *see also* TEX. PENAL CODE § 9.32(a). While the accused bears the burden of producing some evidence in support of self-defense, the prosecution bears the ultimate burden of persuasion beyond a reasonable doubt. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003) (citing *Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991)).

The Court agrees with the Magistrate Judge (and with the Third Court of Appeals) that even taking part of Teague's version of events as true, a jury could still reasonably have found Teague (1) intended to cause serious bodily injury and committed an act clearly dangerous to human life by hitting Jones with the grubbing hoe/pickaxe; and (2) did not reasonably believe he needed to use deadly force to defend himself. Nothing about the physical evidence compels a different conclusion. The jury could have disbelieved McMarion's testimony Teague and Ellis ambushed him, credited Teague's testimony McMarion initiated the scuffle by throwing beer cans at Teague and Ellis following a verbal altercation, and believed Teague's testimony Jones kicked him in the side. Nevertheless, the jury still could rationally have found Teague was not justified in the belief he needed to use *deadly* force to defend himself, as the jury could have disbelieved Teague's testimony the thrown beer cans made him fear for his life. On habeas review, credibility judgments and conflicting inferences must be resolved in favor of the jury's verdict. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

The Court therefore finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence.

-15-

Consequently, this Court agrees with the Magistrate Judge that Teague's request for habeas relief is unwarranted.

An appeal may not be taken to the court of appeals from a final order in a proceeding under § 2254 "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Proceedings, effective December 1, 2009, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejects a movant's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the dismissal of Teague's § 2254 petition on substantive or procedural grounds, nor find the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484)). Thus, a certificate of appealability shall not issue.

-16-

Accordingly,

IT IS ORDERED that Petitioner Bryan Teague's Objections [#8] are OVERRULED;

IT IS FURTHER ORDERED that Respondent William Stephens' Objections [#9] are OVERRULED;

IT IS FURTHER ORDERED that the Report and Recommendation of the United States Magistrate Judge [#17] is ACCEPTED;

IT IS FURTHER ORDERED that Petitioner Bryan Teague's Petition for Writ of Habeas Corpus [#1] is DENIED;

IT IS FINALLY ORDERED that a certificate of appealability is DENIED.


SIGNED this the **27** day of October 2014.


_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE